110 F.3d 70
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Elizabeth SELANDIA, Plaintiff-Appellant,
v.
Shirley S. CHATER,* Commissioner, Social
Security Administration Defendant-Appellee.
 No. 96-15286.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 14, 1997.**
Decided March 24, 1997.
 
 Before: ALARCN, BEEZER, and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM***
 
 
 2
 Elizabeth Selandia ("Selandia") appeals from the judgment affirming the decision of the Commissioner of the Social Security Administration's ("Commissioner") denial of Selandia's application for Supplemental Security Income ("SSI") benefits. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 42 U.S.C. § 405(g), and we affirm.****
 
 
 3
 * We review the district court's grant of summary judgment de novo. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir.1996). "The Secretary's decision to deny benefits will be disturbed only if it is not supported by substantial evidence or it is based on legal error." Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir.1989) (quotations omitted).
 
 II
 
 4
 Selandia asserts that the ALJ erred by rejecting her treating doctor's opinion about the severity of her functional limitations. "[I]f the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." Lester v. Chater, 81 F.3d 821, 830 (9th Cir.1996) (quoting Murray v. Heckler, 722 F.2d 499, 502 (9th Cir.1983)).
 
 
 5
 The ALJ provided specific and legitimate reasons for rejecting the opinion of Selandia's treating physician. The ALJ noted that while Dr. Jean Pouteau, Selandia's treating physician,[1] agreed with the conclusions of the examining doctors that Selandia suffered from severe depression and somatoform pain disorder, they disagreed about the severity of her impairments and her ability to work. Dr. Pouteau concluded that the severity of Selandia's impairments precluded her from engaging in all work related activity. However, he appeared to contradict this conclusion when he testified that "as long as it doesn't involve people, she might be able to work [full-time]." Dr. Barry Ramer and Dr. Susan Dubin-McNeil, concluded that Selandia was able to return to work. Dr. Mark Levy concluded that Selandia was "functioning only marginally" but did not express an opinion about Selandia's ability to work. He observed that Selandia "appears to be capable of handling her own funds" and that "[s]he is above average in intelligence and probably quite bright."
 
 
 6
 In rejecting Dr. Pouteau's conclusions, the ALJ expressly relied upon the evaluation of Dr. James Damon, who found no "significant orthopedic problem," medical reports from the University of California, San Francisco Medical Center, which indicated that her complaints lacked "classical symptomology," earlier medical records, which indicated that she presented a "good rehabilitation potential," and the evaluation of Dr. Ramer, who discounted Selandia's "myriad complaints" by noting the "substantial contradiction in the medical records."
 
 
 7
 The ALJ also noted that Selandia drove her car to school and the store, cleaned her apartment, did her laundry, and made her own clothes. Further, the record shows that she received an A.A. degree from the College of Marin in 1992 and completed three semesters as a full-time student at the University of California, Berkeley.
 
 
 8
 Based on this evidence, the ALJ concluded that Selandia's "emotional disorders [are] not of listing severity, as Dr. Pouteau's report suggests." We are persuaded that the ALJ provided specific and legitimate reasons supported by substantial evidence in the record to support the rejection of Dr. Pouteau's opinion.
 
 III
 
 9
 Selandia contends that the ALJ erred in concluding that she was capable of performing some of her past relevant work as an editorial assistant. In determining whether a claimant has the capacity to perform her past relevant work, the ALJ must make specific factual findings as to a claimant's residual functional capacity in relation to the demands of her past relevant work. SSR No. 82-62, Soc.Sec.Rep. 162 (Cum.Ed.1983); see §§ 404.1571, 404.1574, 404.1565(a). In assessing Selandia's residual functional capacity, the ALJ considered her back injury, obesity, and psychiatric condition, as well as her testimony regarding her subjective pain and inability to interact with people. In concluding that Selandia could perform past relevant work, the ALJ took into consideration the fact that, despite her long medical history, Selandia has been able to perform work as an editorial assistant/author, in-home companion, astrologer, teacher/tutor, and palm reader.
 
 
 10
 The ALJ further noted that the position of editorial assistant was sedentary work that required a limited amount of standing, walking, or interaction with people. The ALJ's conclusion that Selandia was capable of performing her past relevant work as an editorial assistant is supported by specific factual findings.
 
 
 11
 Selandia contends that the ALJ erred in concluding that she was capable of performing her past relevant work as a "free-lance editorial assistant/author" because her past editorial assistant position was not on a free-lance basis. We do not find this argument persuasive. The record demonstrates that the ALJ's analysis centered on Selandia's ability to perform her past relevant work as an editorial assistant.
 
 IV
 
 12
 Selandia also maintains that the ALJ erred by failing to consider the combined effect of her physical and psychological impairments in assessing her ability to work. In determining whether the claimant's impairments "are of a sufficient medical severity" to qualify for benefits, the ALJ must "consider the combined effect of all of the individual's impairments." 42 U.S.C. § 1382c(a)(3)(F).
 
 
 13
 Contrary to Selandia's assertion, the ALJ considered the effect of all of her impairments, including depression, anxiety, a lower back problem, and somatoform pain disorder. The ALJ found that Selandia's testimony regarding the multiplicity of her symptoms and the severity of her impairments was exaggerated and unreliable. A claimant's subjective allegation of pain is not sufficient in itself to establish disability. 20 C.F.R. § 404.1529(a). In determining the credibility of a claimant's subjective pain testimony, the ALJ may consider the "claimant's daily activities, inconsistencies in testimony, ... and relevant character evidence." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir.1995).
 
 
 14
 Selandia's own testimony demonstrated that she was capable of maintaining her household and personal grooming, attending classes, doing her homework, and driving her car. She also testified that she could walk up to two blocks, stand for as long as ten minutes, and sit for variable amounts of time.
 
 
 15
 Selandia's credibility was seriously impeached by evidence that a letter she submitted to prove that she was disabled was not written or signed by a former employer and contained statements that were false. The ALJ's finding that the functional limitations alleged by Selandia were not credible is supported by specific findings in the record.
 
 
 16
 AFFIRMED.
 
 
 
 *
 In accordance with section 106(d) of the Social Security Independence and Program Improvements Act of 1994, Shirley S. Chater, Commissioner of the Social Security Administration, is substituted for Donna E. Shalala, Secretary of Health and Human Services, as the defendant
 
 
 **
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 ****
 Selandia does not prevail in her appeal. Accordingly, her request for attorney's fees pursuant to 28 U.S.C. § 2412(d) is denied
 
 
 [1]
 Dr. Pouteau first examined Selandia on July 6, 1992. At that point, he began to see her for monthly sessions. It is not clear in the record that any medication was prescribed during these sessions or that treatment involved anything more than counseling therapy. In 1993, he began to see her twice a month. In 1994, he conducted sessions with her once a week